IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


MICHELLE CORMIER                                            PLAINTIFF


v.                              CIVIL NO. 20-5161


ANDREW SAUL, Commissioner                                  DEFENDANT
Social Security Administration


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Michelle Cormier, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current application for DIB on April 1, 2015, alleging an inability to work since November 13, 2014, due to Klippel Feil[1], disc disease, and anxiety. (Tr. 194, 370). An administrative hearing was held on October 23, 2018, at which Plaintiff appeared

---

[1] Klippel Feil syndrome (KFS) is a condition affecting the development of the bones in the spine. People with KFS are born with abnormal fusion of at least two spinal bones (vertebrae) in the neck. Common features may include a short neck, and restricted movement of the upper spine. Some people with KFS have no symptoms. Others may have frequent headaches, back and neck pain, and other nerve issues.  People with KFS are at risk for severe spinal injury. https://rarediseases.info.nih.gov/diseases/10280/klippel-feil-syndrome (Last accessed May 19, 2021).

with counsel and testified.  (Tr. 111-38).[2] A vocational expert (VE) also testified. *Id*. At this hearing, Plaintiff amended her alleged onset date to March 23, 2015.  (Tr. 115).

By written decision dated September 16, 2019, the ALJ found that Plaintiff had an impairment or combination of impairments that were severe: Klippel-Feil syndrome, degenerative disc disease (disorders of the back-discogenic and degenerative), fibromyalgia and cervicalgia, status post cervical fusion. (Tr. 13-14). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except she would be limited to occasional rotation and flexion of the neck, occasional stooping and crouching, and could occasionally reach in all directions. (Tr. 14-17).

With the help of a VE, the ALJ determined that Plaintiff would be unable to perform any of her past relevant work, but would be able to perform the representative occupations of counter clerk, investigator dealer accounts, and blending tank tender helper.  (Tr. 18-19). The ALJ found Plaintiff had not been under a disability as defined by the Act from March 23, 2015, through December 31, 2018, the date last insured.  (Tr. 19).

Plaintiff requested a review of the hearing decision by the Appeals Council, and on June 29, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4).

Subsequently, Plaintiff filed this action. (ECF No. 2). The parties have filed appeal briefs and this case is before the undersigned for report and recommendation. (ECF No. 15,

---

[2] A prior unfavorable decision was made on April 19, 2017, wherein the ALJ found Plaintiff had not been under a disability from November 13, 2014, through the date of his decision.  (Tr. 201). On April 19, 2018, the Appeals Council found the hearing decision was not supported at step five. (Tr. 208-209).  The Appeals Council remanded the case to the ALJ to obtain supplemental evidence from a vocational expert. *Id*.

16). The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

## II.    Relevant Evidence:

On May 1, 2015, Plaintiff had an MRI of her lumbar spine. (Tr. 1233). This MRI showed multilevel degenerative and facet joint disease most prominently reflected at L4-L5 and L5-S1 and mild right foraminal narrowing at L5-S1. (Tr. 1233-34).

On August 5, 2015, Dr. Charles Friedman, a state agency physician, reviewed Plaintiff's medical records and opined that, due to the medically determinable impairments of degenerative disc disease, lumbago, and Klippel-Feil syndrome, the medical evidence of record supported Plaintiff's RFC for light duty work. (Tr. 187).

On September 23, 2015, Janice William, APN, provided a medical source statement. APN Williams listed Plaintiff's diagnoses of chronic pain, positive ANA[3], and a Klippel-Feil deformity. (Tr. 1243). APN Williams marked boxes indicating Plaintiff experienced chronic pain, and would require frequent breaks throughout the day that could not be accommodated by standard break periods. *Id*. She noted Plaintiff was taking Cymbalta, Lyrica, and Ultram, and that these medications interfered with her ability to concentrate. *Id*. APN Williams indicated Plaintiff had good days and bad days and would be likely to be absent more than four days per month. *Id*. APN Williams also indicated Plaintiff would require the ability to alternate sitting, standing, and reclining as needed during an 8-hour workday. *Id*. APN Williams opined

---

[3] ANA tests detect antinuclear antibodies in the blood, which are antibodies that attack one's own tissues. In most cases, a positive ANA test indicates an autoimmune reaction.  These tests are generally ordered when an autoimmune disease such as lupus, rheumatoid arthritis, or scleroderma is suspected. https://www.mayoclinic.org/tests-procedures/ana-test/about/pac-20385204 (Last accessed May 19, 2021).

these limitations were based upon Plaintiff's joint pain at multiple sites, as well as the medication required to control her pain which altered her mental status. (Tr. 1244).

On October 30, 2017, Plaintiff underwent an MRI of her brain because she was experiencing dizziness and tremor in both her hands.  (Tr. 1232). The MRI revealed a small white matter cyst with a benign appearance, but was otherwise unremarkable. *Id*.

On March 12, 2018, an MRI of Plaintiff's cervical spine illustrated stable findings of Klippel-Feil deformity involving the C3-C5 levels, mild canal stenosis at C5-6 secondary to progressive degenerative change with disc/osteophyte and uncovertebral hypertrophy. (Tr. 721-22).

On March 28, 2018, Gannon Randolph, MD, reviewed an X-Ray of Plaintiff's cervical spine and found Klippel-Feil syndrome with failure of segmentation of C3-5, moderate degenerative changes at C5-6, and mild degenerative changes at C2-3. (Tr. 1229).  Dr. Randolph opined Plaintiff's MRI demonstrated moderately severe degenerative disc disease at the C5-6 level, mild disease at the C2-3 level, and biforaminal stenosis at C5-6.  *Id*. However, there was no finding of high-grade canal stenosis or foraminal stenosis at other levels. *Id*.

On August 21, 2018, Plaintiff had an MRI of her lumbar spine which showed multilevel degenerative disc and facet joint disease in the lumbar spine, which was slightly progressed from the previous study and no evidence of lithesis.[4] Incidental note was made of a right paracentral disc extrusion at T11-12 measuring 7 by 6 by 12 mm causing paracentral canal stenosis. (Tr. 1222). Dr. Rossitza Hristoskova reviewed the MRI on August 26, 2018, noting

---

[4] Spondyolithesis is a condition of the spine, which occurs when one vertebra moves more than it should. This is most common at the base of the spine, and if the slipped vertebra puts pressure on a nerve, it can cause lower back or leg pain. https://www.webmd.com/back-pain/guide/pain-management-spondylolisthesis (last accessed on May 19, 2021).

the MRI revealed some arthritis and slightly worse bulging discs at several levels, and planning to discuss these findings at a follow-up appointment. (Tr. 1221-22).

On September 17, 2018, Plaintiff was assessed for surgery by Dr. Brandon Evans. (Tr. 1225). Plaintiff presented with chronic neck pain and left upper extremity radiculopathy. (Tr. 1224). Dr. Evans performed a physical exam and noted Plaintiff had restricted flexion and extension in her cervical spine with pain upon extension, but her gait and station were normal. *Id.* Plaintiff also presented with diminished light touch sensation over her left forearm, thumb, and index finger. *Id.* Dr. Evans found Plaintiff had Klippel-Feil autofusion of C3-C5 and adjacent segment degrative spondylosis at C5-C6 with left intraforaminal disc osteophyte causing severe foraminal stenosis and nerve root compression, which was congruent with her symptoms. *Id.* Dr. Evans recommended surgery. (Tr. 1225).

On September 25, 2018, Dr. Evans performed surgery on Plaintiff's cervical spine which included a discectomy at C5-C6 for decompression of nerve roots and spinal cord, and a bone graft; Dr. Evans employed a titanium plate as well as a microsurgical technique for decompression of nerve roots, thecal sac, and the spinal cord. (Tr. 1236-37).

On October 15, 2018, Dr. Hristoskova provided a medical source statement. (Tr. 1242). Dr. Hristoskova provided diagnoses of chronic low back pain, chronic neck pain, lumbar spinal stenosis, severe foraminal stenosis at C5-C6 and Klippel-Feil deformity. *Id.* She indicated her agreement with assessments made by APN Williams on September 23, 2015, noting the restrictions and limitations were still applicable. *Id.* Dr. Hristoskova noted Plaintiff's pending neurosurgery consult regarding her low back pain and lumbar spinal stenosis. *Id.* Dr. Hristoskova noted Plaintiff also suffered hypoesthesia over the medial and posterior aspect of her left leg, and was taking a pain medication that altered her mental status. *Id.* She listed

Plaintiff's cervical and lumbar MRIs from March and May of 2018, pain in her neck and lower back, weakness in her left leg and impaired balance as the bases of her opinion. *Id.*

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance, but is enough that a reasonable mind could accept as adequate to support a conclusion. *Ponder v. Colvin*, 770 F.3d 1190, 1193-94 (8th Cir. 2014). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964,966 (8th Cir. 2003). So long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F. 3d 742, 747 (8th Cir. 2001). If after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted for at least one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423 (d)(3), 1382(3)(C).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R § 404.1520.  While the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability and to demonstrate RFC both remain with the claimant. *Stormo v. Barnhart*, 377 F. 3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").

IV.     **Discussion**

Plaintiff raises three issues in this matter: 1) whether the ALJ failed to properly evaluate the medical opinion evidence; 2) whether the ALJ based the RFC upon his lay opinion without proper medical foundation; and 3) whether the ALJ erred in evaluating Plaintiff's subjective complaints. (ECF No. 15). After a thorough review of the record, the undersigned agrees that the ALJ's RFC assessment is not supported by substantial evidence.

RFC is defined as the most that a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's

own descriptions of her limitations. *Guilliams v. Barhart*, 393 F. 3d 798, 801 (8th Cir. 2005). *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations from symptoms such as pain are also factored into the assessment. 20 C.F.R. §404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." *Id*.

Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, particularly by giving little weight to the medical source statement from Plaintiff's treating physician, Dr. Hrisotskova, and finding her opinion was not consistent with the evidence of record.  (Doc. 15, pp. 1-6).  Although a treating physician's opinion is often given controlling weight, "such deference is not appropriate when the opinion is inconsistent with the other substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).  While the ALJ is permitted to discount opinion evidence that is inconsistent with the record as a whole, the ALJ's RFC determination must be supported by medical evidence that addresses Plaintiff's ability to function in the workplace.  "Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

The ALJ reviewed the multiple medical opinions in the record, but assigned significant weight to only one opinion.  (Tr. 17). The ALJ gave significant weight to the opinion of state medical consultant Dr. Charles Friedman, and little weight to Plaintiff's treatment providers, APN Williams and Dr. Hristokova, finding their opined limitations were inconsistent with the objective findings or treatment history. *Id*. Dr. Friedman opined on August 5, 2015, that Plaintiff was able to perform light work. (Tr. 180-87). However, Dr. Friedman's opinion was rendered a mere four months into a relevant time period of over three years, and lacked the benefit of the majority of Plaintiff's treatment history and the objective findings. Notably, Plaintiff underwent a spinal surgical intervention in 2018

The Court finds the ALJ's RFC determination is not supported by substantial evidence and requires remand to further develop the record and further consider Plaintiff's maximum RFC.  On remand, the ALJ should request a complete RFC assessment from Plaintiff's treating physician, Dr. Hristoskova, for the relevant period.  If the ALJ is unable to procure an RFC assessment from Plaintiff's treating physician, then the ALJ should order a consultative examination, to include a thorough RFC assessment.  With this additional evidence, the ALJ should re-evaluate Plaintiff's RFC and his step four and step five findings.

## V.        Conclusion

Based on the foregoing, it is recommended that the Commissioner's final decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of May 2021.

/s/ *Christy Comstock*
HON. CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

10